UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY J. CARDONA,<br><br>                              Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,[1]<br><br>                              Defendant. | Case No.:  20CV226-BLM<br><br>**ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 13]** |

Plaintiff Beverly J. Cardona brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her claim for "disability insurance benefits and/or Supplemental Security Income benefits."  ECF No. 1.  Before the Court are Plaintiff's motion for summary judgment [ECF No. 13 ("Mot.")] and Defendant's Opposition to Plaintiff's motion [ECF No. 16 ("Oppo.").  Plaintiff did not file a reply.  See Docket.  For the reasons set forth below, Plaintiff's motion for summary judgment is **DENIED**.

## PROCEDURAL BACKGROUND

On  November 14, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on March 23, 2016.  See Administrative Record ("AR") at 18.  The claim was denied initially on May 10, 2017, and upon reconsideration

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.

1   on June 21, 2017, resulting in Plaintiff's request for an administrative hearing on June 30, 2017.

2   Id.

3          On October 23, 2019, a hearing was held before Administrative Law Judge ("ALJ") Stacy

4   Zimmerman.  Id. at 18-32.  Plaintiff and an impartial vocational expert ("VE"), Ms. Susan Allison,

5   testified at the hearing.  Id. at 18.  In a written decision dated January 16, 2019, ALJ Zimmerman

6   determined that Plaintiff had not been under a disability, as defined in the Social Security Act,

7   since March 23, 2016.  Id. at 32.  Plaintiff requested review by the Appeals Council.  Id. at 1.

8   In a letter dated December 13, 2019, the Appeals Council denied review of the ALJ's ruling, and

9   the ALJ's decision therefore became the final decision of the Commissioner.  Id. at 1-3.

10         On February 6, 2020, Plaintiff filed the instant action seeking judicial review by the federal

11  district court.  See ECF No. 1.  On September 7, 2021, Plaintiff filed a Motion for Summary

12  Judgment alleging that the ALJ's decision was "not supported by substantial evidence and was

13  based on legal error."  Mot. at 12-13.  Defendant filed a timely Opposition to Plaintiff's Motion

14  for Summary Judgment asserting that the Commissioner's decision "is supported by substantial

15  evidence and free of reversible legal error."  Oppo. at 5.

16                                  **ALJ's DECISION**

17         On January 16, 2019, the ALJ issued a written decision in which she determined that

18  Plaintiff was not disabled as defined in the Social Security Act.  AR at 18-32.  At step one, the

19  ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant

20  time period (since March 23, 2016).  Id. at 20.  At step two, she considered all of Plaintiff's

21  medical impairments and determined that the following impairments were "severe" as defined

22  in the Regulations: "lumbar spine degenerative disc disease with radiculopathy; degenerative

23  changes of the cervical spine; right knee synovitis/chondromalacia patella; major depressive

24  disorder; and anxiety disorder (20 CFR 404.1520(c))."  Id.  At step three, the ALJ found that

25  Plaintiff's medically determinable impairments or combination of impairments did not meet or

26  medically equal the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

27  404.1520(d), 404.1525 and 404.1526).  Id. at 21.  At step four, the ALJ considered Plaintiff's

28  severe impairments and determined that her residual functional capacity ("RFC") permitted her

20CV226-BLM

to perform the following: lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours and sit for six hours in an eight-hour workday; occasionally climb, balance, stoop kneel, crouch, or crawl; and perform simple, routine tasks.

Id. at 23.   The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" Plaintiff's "statements, and the corroborating statements of Wendy Cardona-Estrada, the [Plaintiff's] spouse, (which I give some weight) concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record detailed above." Id. at 30.   The ALJ further determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.   Id. at 31.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.   42 U.S.C. § 405(g).   The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.   Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence.") (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting Molina v. Astrue, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), superseded by regulation on other grounds.   It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record.   Id.   See also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).   "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311 (9th Cir. 2005) (quoting Reddick v. Chater,

20CV226-BLM

157 F.3d 715, 720 (9th Cir. 1998)).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Ahearn, 988 F.3d at 1115 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  Id. ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) and Molina, 674 F.3d 1110-1111).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Miner, 722 Fed. Appx. at 633.  Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court also may remand the matter to the Social Security Administration for further proceedings.  Id.

## DISCUSSION

Plaintiff argues that the Court should reverse the decision of the ALJ because it was "not supported by substantial evidence and was based on legal error."  Mot. at 12-13.  Specifically, Plaintiff argues that the ALJ failed to properly (1) assess her impairments at Step Two, (2) evaluate the severity of her impairments at Step Three, (3) evaluate her ability perform other work generally available, and (4) consider her complaints of pain.  Id. at 3-13.

Defendant contends that "the ALJ properly assessed Plaintiff's severe impairments at Step Two[,]" the ALJ correctly evaluated the severity of Plaintiff's impairments as Step Three, and substantial evidence supported the ALJ's RFC assessment and finding that Plaintiff could perform other work.  Oppo. at 7-20.

### A.   Step Two

The ALJ found that Plaintiff suffers from the following severe impairments, "lumbar spine degenerative disc disease with radiculopathy; degenerative changes of the cervical spine; right knee synovitis/chondromalacia patella; major depressive disorder; and anxiety disorder (20 CFR

20CV226-BLM

404.1520(c)).”  AR at 20.  At step two of the evaluation process, an ALJ must consider the medical severity of a plaintiff's impairments and if the ALJ finds that the plaintiff does not have a severe medically determinable impairment or combination of impairments satisfying the duration requirements, the ALJ will find that the plaintiff is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  Social Security claimants bear the burden of establishing that they have a severe impairment with medical evidence.  20 C.F.R. § 404.1512.  Diagnosis of an impairment alone is not sufficient to make that impairment severe.  See Susan C. v. Berryhill, 2019 WL 12831730, at *4 (C.D. Cal., May 28, 2019) (“mere diagnosis of an impairment—or even treatment for it—is insufficient to establish severity at step two”) (citing Febach v. Colvin, 580 F. App'x 530, 531 (9th Cir. 2014) (“Although [claimant] was diagnosed with depression, that diagnosis alone is insufficient for finding a ‘severe’ impairment[.] … There was sufficient evidence … for the ALJ to conclude that [his] depression is not ‘severe,’ including reports by at least three of [his] physicians suggesting that his impairment is ‘non-severe.’ ”)).  To qualify as severe, an impairment must significantly limit a claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 404.1522(a).  “When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point ‘to a host of diagnoses scattered throughout the medical record.’  Rather, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis.”  Geoffrey William H. v. Comm'r of Soc. Sec., 2020 WL 1918098, at *8 (E.D. Wash., Feb. 24, 2020) (quoting Cindy F. v. Berryhill, 367 F. Supp. 3d 1195, 1207 (D. Or. 2019)).

Plaintiff appears to argue that she has additional severe impairments that the ALJ failed to include, but Plaintiff simply lists impairments with a citation to the record without any argument or explanation.[2]  Mot. at 3.  The first impairment Plaintiff lists is “Anxiety and

---

[2] See Mot. at 3 (“Step Two: Ms. Cardona suffers from a medically determinable impairment that is severe, including: 1. Anxiety and Depression (AR 368) “Activity level severely limited “ (AR 1199) 2. Chronic Pain (AR 2807) ‘We had a long discussion about pain management. This back pain stems from injury bending down at home. March 2016. She has been seen by Physical Medicine and had an injection at that time. Trying physical therapy. She is open to other

20CV226-BLM

1  Depression (AR 368)."  Id.  However, the ALJ found Plaintiff to be suffering from "major

2  depressive disorder; and anxiety disorder" so Plaintiff's argument is moot or at the very least

3  unclear and unsupported.  AR at 20.  Plaintiff then lists "Chronic Pain (AR 2807)[,]" "Chronic

4  Pain Management (AR 1206)[,]" and "Cognitive Behavioral Therapy to deal with her chronic

5  pain. (AR 2820)."  Mot. at 3.  As Defendant notes, chronic pain management and cognitive

6  behavioral therapy are not impairments, they are treatments.  Plaintiff cites to AR 2807 in

7  support of her position that she suffers from the severe impairment of chronic pain.  Mot. at 3.

8  AR 2807 is a Kaiser Permanente record that merely lists the reasons for Plaintiff's August 15,

9  2017 call/visit as Chronic Pain, Group Counseling, and Physical Therapy.  Plaintiff notes that the

10  "medical records indicate that [Plaintiff] suffers from pain, which limits [her] ability to function."

11  Mot. at 12.  While Plaintiff's pain is mentioned throughout the record, Plaintiff fails to provide

12  any argument or support for finding that the ALJ erred in Step Two or to explain what limitations

13  exist due to her chronic pain that the ALJ failed to consider in her analysis.  Id. at 3, 12; see

14  also Myers v. Colvin, 954 F.Supp.2d 1163, 1174 (W.D. Wash. 2013) ("A finding that an

15  impairment is severe requires more than a diagnosis and evidence of subjective complaints of

16  pain"); Cindy F., 367 F.Supp.3d at 1207 ("beyond simply pointing to a host of diagnoses

17  scattered throughout the medical record, Plaintiff does not advance a single functional limitation

18  that the ALJ failed to consider in the sequential analysis.  A diagnosis alone does not establish

19  the severity of an impairment").

20          Even if the ALJ erred by failing to include the severe impairment of chronic pain, the

21  failure is harmless.  The Ninth Circuit has held that an ALJ's failure to identify additional severe

22  impairments is harmless when the "ALJ resolves step two in a claimant's favor – i.e., finding that

23

24

25  treatment options. We discussed trying nerve medication to allow patient to avoid using
   Norco...Additionally will try non-pharmacologic management with the integrative program.
26  **Patient willing and wants to get better and have better control of her pain**.' (emphasis
   added) (AR 1206) 3. Chronic Pain Management (AR2816) 4. Cognitive Behavioral Therapy to
27  deal with her chronic pain. (AR 2820) The opinion alleges that there are 'exaggeration of
   cognitive difficulties and likely malingering' citing (AR 1206,1238-1239). HOWEVER, this is not
28  what the Exhibit 6F/10, 42,43 reports, (as cited supra)") (emphasis in original).

a severe impairment exists." <u>Christofferson v. Comm'r of Soc. Sec.</u>, 2020 WL 5848342, *4 (D. Idaho, Sept. 30, 2020) (citing <u>Pouppirt v. Comm'r of Soc. Sec.</u>, 609 Fed. Appx. 440, 441 (9th Cir. 2015) and <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9th Cir. 2005)).  This is especially true if the ALJ considered the impairment later in the sequential process. <u>Id.</u>  Here, the ALJ resolved step two in Plaintiff's favor by finding that several severe impairments exist.  AR at 20. Additionally, the ALJ considered Plaintiff's allegations of chronic pain throughout her analysis. For example, prior to determining Plaintiff's RFC, the ALJ noted that in making her finding she "considered all symptoms" and "opinion evidence." <u>Id.</u> at 24.  The ALJ considered that Plaintiff "alleges that she experiences back, neck, leg, knee and hand pain." <u>Id.</u>  The ALJ also identified Plaintiff's January 2017 Adult Function Report. <u>Id.</u> at 26.  In that report, Plaintiff described how her pain at night prevented her from sleeping and how her back caused her a lot of pain. <u>Id.</u> at 834, 838.  The ALJ noted that Plaintiff complained of right knee pain in April 2017. <u>Id.</u> at 26. The ALJ gave great weight to the medical opinion of Dr. Ella-Tamayo, who examined Plaintiff on April 28, 2017 at the request of the Department of Social Services. <u>Id.</u> at 29, 1189 – 1194.  Dr. Ella-Tamayo concluded that Plaintiff could push, pull, lift, and carry twenty pounds occasionally and ten pounds frequently, sit unrestricted, stand, and walk for six hours in an eight hour workday, and kneel occasionally, but not squat, and that Plaintiff had no visual, communicative, or environmental limitations. <u>Id.</u> at 1194.  This RFC included Dr. Ella-Tamayo's consideration of Plaintiff's presenting complaints of back and knee pain and history of hip pain and her opinion that Plaintiff had low back pain with right lower extremity radiculopathy and right knee pain with a past history of torn meniscus. <u>Id.</u>  Accordingly, in giving great weight to Dr. Ella-Tamayo's medical opinion, the ALJ again considered Plaintiff's reports of chronic pain.  After considering Plaintiff's allegations regarding her symptoms and limitations, the ALJ concluded that Plaintiff's "allegations of generally disabling symptoms and limitations are not corroborated by the evidence in the record." <u>Id.</u> at 29.

The Court finds that the ALJ did not err in her Step Two determination and that even if she did err, the error was harmless. <u>Myers</u>, 954 F.Supp.2d at 1174 ("plaintiff has not demonstrated any additional significant limitations as a result of her chronic pain syndrome that

are not already accounted for by the ALJ's RFC assessment. Accordingly, the Court concludes that the ALJ's error in evaluating chronic pain syndrome at step two was harmless"); <u>see</u> <u>also</u> <u>Cindy F.</u>, 367 F.Supp.3d at 1207 ("the ALJ considered all of Plaintiff's impairments at the subsequent steps of the sequential analysis and in his summary of the medical evidence. Thus, even assuming the ALJ erred at step two, that error would have been harmless").

### B.   **Step Three**

In 20 C.F.R. Part 404, Subpart P, Appendix 1, the Commissioner has identified certain impairments presumed to be of sufficient severity to prevent the performance of work.  20 C.F.R. § 416.925(a); <u>see</u> <u>also</u> <u>Misty F. v. Comm'r of Soc. Sec.</u>, 2022 WL 101887, at *2 (W.D. Wash., Jan. 10, 2022) ("[t]he listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'") (quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532 (1990)).  At step three of the evaluation process, the ALJ must determine whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations.  20 C.F.R. 416.920(a)(4)(iii).   If a claimant has an impairment that meets or equals a listed impairment, disability is presumed, and benefits are awarded.  20 C.F.R. § 416.920(d).  Plaintiff bears the burden of proof at step three.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not establish disability.  <u>See</u> <u>Key v. Heckler</u>, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  "To meet a listing, an impairment 'must meet all of the specified medical criteria.' To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" <u>Misty F.</u>, 2022 WL 101887, at *2 (quoting <u>Sullivan</u>, 493 U.S. at 530 and <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1099 (9th Cir. 1999)) (citing ; § 416.926 (a)).  If the ALJ determines at step three that a claimant's impairment does not meet a listing, the ALJ must provide adequate support for that decision.  <u>Lewis v. Apfel</u>, 236 F.3d 503 at 514 (9th Cir. 2001).  This may be accomplished by adequately discussing the evidence supporting the Step Three determination anywhere in the decision.  <u>See</u> <u>Patricia C. v. Saul</u>, 2020 WL 4596757, at *14 (S.D. Cal., Aug. 11, 2020) (citing <u>Kennedy v. Colvin</u>, 738 F.3d 1172, 1178 (9th Cir. 2013)).  Once step three is completed, before

20CV226-BLM

moving to step four, the ALJ determines the plaintiff's RFC.

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  AR at 21. After reaching that conclusion, the ALJ determined that Plaintiff had the RFC to "lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours and sit for six hours in an eight-hour workday; occasionally climb, balance, stoop kneel, crouch, or crawl; and perform simple, routine tasks." Id. at 23.

Plaintiff argues that she meets or equals listings 1.04, Disorders of the Spine, 1.02, Dysfunction of a Joint(s), and 12.04, Affective Disorder and that consideration should be given to these listings "ether separately or in combination to remand this decision."  Mot. at 4-9.

    1.    1.02 - Dysfunction of a Joint(s)

Listing 1.02 states the following:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02.  1.00B2b defines the "inability to ambulate effectively" as follows:

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. ...

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable

walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P. app. 1, § 1.00(B)(2)(b)(1)–(2).

Plaintiff argues that she meets Listing 1.02 because she (1) has had progressing knee pain that hurts more when she walks, (2) has experienced popping, swelling, locking, buckling, and some stiffness that is worse in cold weather, (3) weighs 160 pounds and is five feet tall, (4) has had a positive McMurry's Test, Thessaly test and normal gait, (5) was recommended physical therapy, (6) had an MRI that showed chondral thinning and a small 8-mm cyst in the deep tissue, and (7) was diagnosed with right knee joint Synovitis due to right knee stiffness and weakness with gait deviation.  Mot. at 5-6.  Defendant contends that Plaintiff has not established the inability to walk without an assistive device and, therefore, does not meet or equal listing 1.02A.  Oppo. at 10.

The ALJ specifically considered Listing 1.02 and found that Plaintiff's "treatment and examination history fail to establish that the criteria of [listing 1.02], or any other, listing – such as the requisite inability to ambulate effectively or neurological deficits (including positive straight leg raising, both sitting and supine) – have been met or medically equaled."  AR at 21.

The ALJ did not err by concluding that Plaintiff failed to meet or medically equal the criteria  necessary for Listing 1.02.  First, Plaintiff does not identify or argue that she has a "gross anatomical deformity."  Ford v. Saul, 950 F.3d 1141, 1157 (9th Cir. 2020) ("there is ample evidence in the record supporting the ALJ's conclusion that Ford did not meet Listing 1.02 or 1.03. Among other things, there is no evidence in the record that Ford suffered a gross

10

anatomical deformity, one of the required criteria to meet Listing 1.02"); see also Ann P. v. Saul, 2021 WL 1893027, at *4 (C.D. Cal., May 11, 2021) ("the Court understands "gross anatomical deformity" to refer to a body part (such as a bone, muscle, or joint) that is misshaped in some significant way.") (citing Igo v. Colvin, 839 F.3d 724, 729 (8th Cir. 2016) ("Because the regulations do not define 'gross anatomical deformity,' we must give the term its 'ordinary, contemporary, common meaning.' ") (quoting Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)). Second, as Defendant notes, Plaintiff fails to demonstrate or even argue that she is unable to ambulate effectively as defined by Listing 1.02A.

The two medical records that Plaintiff cites in support of her position[3] do not demonstrate that she has a gross anatomical deformity or that she is unable to ambulate effectively. Plaintiff was examined by Dr. Charles Hazen on April 26, 2017 for right knee pain. AR at 1365-1370. Dr. Hazen noted that Plaintiff reported that her pain worsened after walking for more than twenty minutes but that she reported walking as her activity. Id. at 1366. While Dr. Hazen reported that Plaintiff had positive McMurray's and Thessaly's tests, he also reported that an inspection of Plaintiff's knee showed "[n]o swelling, erythema, deformity, atrophy or hypertrophy." Id. at 1367-1368. Dr. Hazen concluded that Plaintiff's gait was normal and that Plaintiff's right knee Xray showed no fractures, significant joint disease, or significant soft tissue abnormality, but showed normal alignment. Id. at 1368. He further concluded that Plaintiff's MRI showed a "[n]onspecific small cyst 8 mm in the deep tissue adjacent to the LCL. No meniscal tear. Cruciate and collateral ligaments are normal." Id. at 1371. Dr. Hazen examined Plaintiff again on August 14, 2017. Id. at 2880. Dr. Hazen reported that Plaintiff had synovitis[4] of the right knee and right knee joint pain and some gait deviation. AR at 2880. He recommended that Plaintiff receive gait training with a single point cane and noted that her long

---

[3] Plaintiff's brief does not actually contain any arguments on this issue. Mot. at 4-6. Instead, Plaintiff merely states that consideration should be given to Listing 1.02 to remand this decision and identifies and summarizes two medical records. Id.

[4] Synovitis is "[i]nflammation of a synovial membrane, especially that of a joint; in general, when unqualified, the same as arthritis." 891270 synovitis, Stedman's Medical Dictionary 891270.

20CV226-BLM

term goals included improving her gait mechanics and being able to walk up to thirty minutes for grocery shopping.  Id. at 2880-2881.  Plaintiff does not explain how the records from these two appointments satisfy the requirements of Listing 1.02.  See Ann P., 2021 WL 1893027, at *3 (citing Ford, 950 F.3d at 1148 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (citation omitted)).  Plaintiff's briefing does not identify what gross anatomical deformity she has and the ALJ's finding that Plaintiff has severe impairments including right knee synovitis/chondromalacia patella is not sufficient to demonstrate a gross anatomical deformity.  See Ogden v. Colvin, 2014 WL 351926, at *7 n.14 (N.D. Fla., Jan. 31, 2014) (noting that Plaintiff's physicians did not diagnose a gross anatomical deformity "but rather assessed degenerative arthritic changes, an irregular medial meniscus, degenerative changes in the lateral meniscus, and chondromalacia patella (Dr. Gaiser); and knee pain, osteoarthritis of the knee, and causalgia of the right lower extremity (Dr. Hammad)" which did not satisfy the requirements of Listing 1.02).

Plaintiff's briefing and the cited records also fail to demonstrate that she is unable to ambulate effectively.  Nothing from Plaintiff's 2017 appointments with Dr. Hazen show that she is unable to (1) carry out her activities of daily living, (2) travel without companion assistance to or from school or work, (3) walk without the use of a walker, two crutches, or two canes, (4) walk a block at a reasonable pace on rough or uneven surfaces, (5) use standard public transportation, (6) carry out routine ambulatory activities, such as shopping and banking, or (7) climb a few steps at a reasonable pace with the use of a single handrail.  See 20 C.F.R. pt. 404, subpt. P. app. 1, § 1.00(B)(2)(b)(2).  Dr. Hazen recommended gait training with a single point cane, not a walker, two crutches, or two canes.  AR at 2881.  Additionally, while Dr. Hazen's goal for Plaintiff of recovering strength in her right leg to be able to grocery shop for thirty minutes indicates that Plaintiff is unable to do so, there is no indication that she is unable to carry out activities of daily living or travel without assistance.  Additionally, throughout the record, there is substantial evidence in support of the AJL's finding that Plaintiff does not meet Listing 1.02 as she is able to ambulate effectively.  Id. at 1907 (July 28, 2016 ""Gait: No foot

drop"), 2016 (January 31, 2017 "Gait normal"), 2057 (February 21, 2017, "Gait: increased trunk lean away from right lower extremity, poor shock attenuation of right lower extremity), 2084 (March 27, 2017 same), 2192 (April 20, 2017, same), 2234 (May 15, 2017, same), 2108 (April 10, 2017 "Patient was ambulatory . . . . upon discharge" after injection in left gluteus maximums for pain), 2142 (April 12, 2017, "Gait: normal Absence of knee effusion, ecchymosis, swelling, deformity or defect.  Range of motion of the knee: Normal range of motion"), 2201 (April 26, 2017 "Gait – Normal."  Right knee imaging shows no acute fracture, significant joint disease, or significant soft tissue abnormality identified. Normal alignment.), 2354 (June 27, 2017 "Gait – Normal"), 2365 (June 12, 2017 "Gait: antalgic with decreased weight bearing on right lower extremity), 2433-2435 (July 17, 2017 Activities: walking, Gait normal), 2554 (July 26, 2017  "Gait normal no foot drop"), 2607 (July 27, 2017 "Gait normal"), 3386 (September 21, 2017 "Gait no foot drop"), 2779 (August 14, 2017 "patient uses no aids, and is a limited community ambler"), 3905 (August 28, 2018  "Gait: slow able to do heel/toe walk").

Because Plaintiff has failed to show that she has a gross anatomical deformity or that she is unable to ambulate effectively, the ALJ's determination that Plaintiff does not meet or medically equal listing 1.02 is not an error.

2.    1.04 - Disorders of the Spine

A plaintiff will be found disabled under Listing 1.04 if she (1) has a disorder of the spine, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture," (2) which results in "compromise of a nerve root...or the spinal cord," and (3) is accompanied by the additional requirements set forth under subsections 1.04(A), 1.04(B), or 1.04(C). 20 C.F.R. 404, subpt. P, app. 1, § 1.04.  Subsection 1.04(A) requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Id. § 1.04(A).  Since Listing 1.04(A) does not specify a shorter durational period, the plaintiff

13

must establish that the impairment meeting the Listing has lasted or can be expected to last for a continuous period of at least 12 months.  See 20 C.F.R. § 416.925(c)(4).  Subsection 1.04(B) requires:

> Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours

Id. § 1.04(B).  Subsection 1.04(C) requires:

> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Id. § 1.04(C).

Plaintiff argues that she meets or equals Listing 1.04 because she (1) was diagnosed with lumbar disc herniation with radiculopathy, (2) had pain management treatment for chronic pain syndrome, (3) was prescribed Norco, (4) was diagnosed with lumbosacral disc degeneration, (5) was off of work due to chronic low back pain, (6) was unable to perform activities of daily living, (7) "exhibited increased lumbar spine lordosis, increased thoracic spine kyphosis, anterior pelvic tilt and knees hyperextension and abnormal gait[,]" (8) had a limited range of motion in her lower extremities, 3/5 muscle performance, and impaired lumbar spine flexion range of motion, (9) received lumbar injections, (10) had "mild reversal of cervical lordotic curvature with mild/moderate degenerative changes at C5-C6[,]" and (11) started taking 300mg of Gabapentin and 50mg of Trazadone for lumbar radiculopathy.  Mot. at 4-5.  Plaintiff does not link these issues to subsections 1.04(A), (B), or (C) or explain how they satisfy the criteria of those subsections.  Mot. at 4-5.

Defendant contends that Plaintiff fails to establish that she met or equaled the criteria of Laiting 1.04.  Oppo. at 10-12,  Specifically, she did not satisfy subpart A because she did not show "that she had motor loss with atrophy or muscle weakness; sensory or reflex loss; and

14

positive straight les [sic] raise tests in sitting and supine positions." <u>Id.</u> at 11.  She did not satisfy subpart B because neither Plaintiff nor the record showed that Plaintiff was "assessed with spinal arachnoiditis as required to meet or equal subpart B." <u>Id.</u> at 10-11.  Finally, Plaintiff did not satisfy subpart C because she did "not established an inability to walk without an assistive device that limits the functioning of both upper extremities." <u>Id.</u>

The ALJ specifically considered Listing 1.04 and found that Plaintiff's "treatment and examination history fail to establish that the criteria of [listing 1.04], or any other, listing – such as the requisite inability to ambulate effectively or neurological deficits (including positive straight leg raising, both sitting and supine) – have been met or medically equaled." AR at 21.

Plaintiff fails to demonstrate that she meets the additional requirements set forth under subsection 1.04(A). 1.04(A) requires "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." <u>Abelardo H. v. Saul</u>, 2019 WL 5894666, at *4 (S.D. Cal., Nov. 12, 2019).  Plaintiff puts "positive straight leg raising test" in bold which the Court takes to mean that Plaintiff is arguing she has satisfied that criteria, but Plaintiff does not provide any cites to the almost four thousand page record in support nor did she file a reply to further address the issue.  Mot. at 4; <u>see also</u> AR at 27 (positive supine straight leg test on the right but no mention of a positive sitting straight leg test), 1079 ("SLR negative"), 3386 (same).  The ALJ did not err in finding that Plaintiff did not meet the criteria of Listing 1/04(A) where she did not show evidence of positive straight leg testing in both the sitting and supine positions. <u>See</u> <u>Abelardo H</u>, 2019 WL 5894666, at *4 (citing <u>Kallenbach v. Berryhill</u>, 766 F. App'x 518, 520 (9th Cir. 2019) (holding that the claimant did not satisfy Listing 1.04(A)'s requirement of "positive straight-leg raising test results, both sitting and supine," because the "examination results state [claimant] had a positive left straight-leg raise but d[id] not specify if the testing conducted included sitting, supine, or both types of straight-leg testing"); <u>Yanchar v. Berryhill</u>, 720 F. App'x 367, 370 (9th Cir. 2017) (holding that the claimant did not meet Listing 1.04 because "the positive straight-leg raising tests in the record

do not specify whether she tested positive both sitting and supine"); <u>Cattano v. Berryhill</u>, 686 F. App'x 408, 410 (9th Cir. 2017) (holding that the claimant did not meet all of the requirements for Listing 1.04(A) because he was unable to point to evidence of positive straight-leg raising tests in both the sitting and supine positions)).

Plaintiff also fails to demonstrate that she meets the additional requirements set forth under subsection 1.04(B). 1.04(B) requires spinal arachnoiditis.  "Spinal arachnoiditis is 'inflammation of the arachnoid membrane,' a membrane that surrounds spinal cord nerves, 'often without involvement of the subjacent subarachnoid space.'" <u>Smith v. Colvin</u>, 2015 WL 248281, at *4 n.3 (C.D. Cal., Jan. 20, 2015) (quoting Stedman's Medical Dictionary arachnoid, arachnoiditis (27th ed.2000)).  Plaintiff identifies several diagnosis and symptoms in her brief, but does not argue or allege that she has spinal arachnoiditis.  Mot. at 4-5.  Plaintiff also does not identify an operative note or pathology report of tissue biopsy, or other medically acceptable imaging in the record confirming spinal arachnoiditis.  <u>Id.</u>

Finally, Plaintiff fails to demonstrate that she meets the additional requirements set forth under subsection 1.04(C). 1.04(C) requires "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."  As addressed in section B1 above, Plaintiff has not shown that she has an inability to ambulate effectively as defined in 1.00B2b.  <u>See</u> <u>supra</u> at 11-13.

Because Plaintiff has failed to show that she has a disorder of the spine, such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture which results in "compromise of a nerve root...or the spinal cord," <u>and</u> meets the requirements of 1.04(A), (B), or (C), Plaintiff has failed to establish that she meet or equals the criteria of Listing 1.04 or that the ALJ erred in her finding.

### 3.   12.04 - Affective Disorder

Satisfying the criteria for Listing 12.04 requires satisfying the criteria of paragraphs A and B or paragraphs A and C.  20 C.F.R. § Pt. 404, Subpt. P, App'x 1 § 12.00.  To meet the requirements of paragraph A, Plaintiff must show "[m]edical documentation of ... Depressive

disorder characterized by five or more of the following: Depressed mood; Diminished interest in almost all activities; Appetite disturbance with change in weight; Sleep disturbance; Observable psychomotor agitation or retardation; Decreased energy; Feelings of guilt or worthlessness; Difficulty concentrating or thinking; or Thoughts of death or suicide." Id. at § 12.04(a).  To satisfy paragraph B criteria, a claimant's mental disorder must result in an "extreme" limitation of one area, or "marked" limitation of two of the following four areas, of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  Id. at ¶ 12.00(A)(2)(b).  To satisfy the paragraph C criteria, a claimant must show that: (1) their mental disorder is "serious and persistent" meaning they have a medically documented history of the existence of the disorder over a period of at least 2 years; (2) "Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) [] is ongoing and [] diminishes the symptoms and signs of [the claimant's] mental disorder[;]" and (3) there is "marginal adjustment" meaning they "have minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life." Id., Listing 12.00(G2)(b-c).  If either the paragraph B or paragraph C criteria are satisfied, the claimant is found to be disabled. See 20 C.F.R. § 404.1520(a)(4)(iii).

a.    Relevant Medical Records

On April 28, 2017, Dr. Halimah McGee, a clinical psychologist, conducted a psychological examination of Plaintiff at the request of the Department of Social Services.  AR at 1181-1186. Dr. McGee noted that Plaintiff's mannerisms and behavior were within normal limits and that she was alert, put forth her best effort, answered questions to the best of her ability, and had adequate and appropriate hygiene and clothing. Id. at 1181.  Dr. McGee conducted a  Weschler Adult Intelligence Scale – IV test and a Weschler Memory Scale IV Test. Id. at 1184-1185.   Dr. McGee concluded that Plaintiff (1) is competent to manage funds on her own behalf, (2) is capable of learning a routine, repetitive skill, (3) is able to function in a regular job setting without additional behavioral controls, (4) has adequate reasoning capabilities, (5) would not create a hazard in the workplace, (6) would be able to maintain regular attendance, (7) would

be able to work with coworkers and the general public, (8) relates adequately to authority figures, (9) is able to comply with instructions, (10) would be able to deal with the usual stress of competitive work and adjust to change, (11) would not require personal supervision, and (12) would be able to get to work on her own if the distance was short or she used public transportation.  Id. at 1185-1186.

On May 9, 2017, State Agency Psychological Consultant Dr. G. Johnson reviewed Plaintiff's medical records and assessed Plaintiff's Mental RFC for March 23, 2016- present.  Id. at 573-574.  Dr. Johnson concluded that Plaintiff is not significantly limited in (1) remembering locations and work like procedures, (2) understanding and remembering very short and simple instructions,  (3) carrying out very short and simple instructions, (4) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, (5) sustaining an ordinary work routine without special supervision, (6) working in coordination with or proximity to others without being distracted by them, (7) making simple work related decisions, and (8) completing a normal workday and workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.  Id.  Dr. Johnson also concluded that Plaintiff is moderately limited in her ability to understand and remember detailed instructions (high borderline memory function) and in her ability to carry out detailed instructions, or maintain attention and concentration for extended periods.  Id.  Dr. Johnson found that Plaintiff had no social interaction limitations or adaptation limitations.  Id.

On June 20, 2017, Dr. Hillel Raclaw, PhD reviewed Plaintiff's medical records and drew the same conclusions as Dr. Johnson.  Id. at 588-590.  When reviewing Plaintiff in terms of Listing 12.04, Dr. Raclaw found that "[a] medically determinable impairment is present that does not precisely satisfy the diagnostic criterial above" and that the evidence "does not establish the presence of the "C" criteria."  Id. at 585-586.  With respect to the paragraph B criteria, Dr. Raclaw concluded that there was a mild limitation of Plaintiff's ability to interact with others and concentrate, persist, or maintain pace and moderate limitations of her ability to understand, remember, or apply information.  Id. at 585.

20CV226-BLM

1    Dr. Navtej Randhawa, Plaintiff's treating psychiatrist, completed a mental assessment of

2    Plaintiff on June 15, 2018.  Id. at 3688-3692.  Dr. Randhawa concluded that Plaintiff was not

3    limited in her ability to (1) remember locations and workweek procedures, carry out very short

4    and simple instructions, (2) work in coordination within a proximity to others without being

5    distracted by them, (3) interact appropriately with the general public, (4) ask simple questions

6    or request assistance, (5) get along with coworkers or peer without distracting them or exhibiting

7    behavioral extremes, (6) maintain socially acceptable behavior and to adhere to basic standards

8    od neatness and cleanliness, and (7) be aware of normal hazards and take appropriate

9    precautions.  Id.  Dr. Randhawa also concluded that Plaintiff was slightly limited in her ability to

10   (1) understand and remember detailed instructions, (2) accept instructions and respond

11   appropriately to criticism from supervisors, and (3) set realistic goals or make plans

12   independently of others.  Id.  Plaintiff was slightly to moderately limited in her ability to respond

13   appropriately to changes in the work setting and moderately limited in her ability to (1) sustain

14   an ordinary routine without special supervision (due to pain), (2) make simple work related

15   decisions, and (3) travel in unfamiliar places or use public transportation.  Id.  Finally, Dr.

16   Randhawa found that Plaintiff was (1) markedly limited in her ability to understand and

17   remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and

18   concentration for extended periods, (4) perform activities within a schedule, (5) maintain regular

19   attendance, and be punctual within customary tolerances, (6) complete a normal work-day and

20   work-week without interruption from psychologically based symptoms and (7) perform at a

21   consistent pace without an unreasonable number and length of rest periods.  Id.

22          b.      Parties' Positions

23   Plaintiff argues that she meets Listing 12.04 because (1) she has been diagnosed with

24   anxiety disorders, sleep disorders, and pain disorders associated with psychological factors, (2)

25   her test scores show that she is experiencing hopelessness, depression, and that she has a

26   markedly limited ability to concentrate with short term memory loss, and (3) she is moderately

27   limited in her ability to sustain an ordinary routine without special supervision due to pain, in

28   her ability to respond appropriately to changes in the work environment, and in the ability to

1   travel in unfamiliar places or use public transportation.  Mot. at 6-9.

2          Defendant contends that "Plaintiff did not met [sic] the high burden of establishing that

3   any of her impairments met or equaled a listing."  Opp. at 18.  Specifically, the ALJ performed

4   the required psychiatric review and appropriately found that Plaintiff did not satisfy the required

5   paragraph B criteria or the alternative paragraph C criteria.  Id. at 12-16.  Defendant further

6   contends that diagnoses, treatment, and symptoms, such as the ones Plaintiff lists to contest

7   the ALJ's findings, are "insufficient to establish that an impairment meets or equals a listing,

8   since there must be objective evidence that establishes the findings specified in the particular

9   listing."  Id. at 16-17.

10         The ALJ specifically considered Listing 12.04 and found that the severity of Plaintiff's

11  impairments, singularly and in combination, did not meet or medically equal the criteria of

12  Listings 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety, and obsessive-

13  compulsive disorders).  AR at 21.

14                 c.    Analysis

15         The ALJ did not err in concluding that Plaintiff did not satisfy paragraph B criteria under

16  listing 12.04.  In finding that Plaintiff did not satisfy the requirements of paragraph B (a mental

17  disorder resulting in an extreme limitation of one area, or marked limitation of two of the four

18  areas, of mental functioning), the ALJ decided that although Plaintiff was (1) moderately limited

19  in understanding, remembering, or applying information, (2) mildly limited in interacting with

20  others,  (3) mildly limited with regard to concentration, persistence, and maintaining pace, and

21  (4) mildly limited in adapting or managing oneself, she did not have at least two marked

22  limitations or one extreme limitation.  Id. at 21-23.

23         There is substantial evidence in the medical record supporting the ALJ's finding that

24  Plaintiff does not satisfy the paragraph B criteria.  The ALJ specifically considered the medical

25  findings of Drs. McGee, Randhawa, Raclaw, and Johnson when evaluating the paragraph B

26  criteria.  Id.  The ALJ noted that three of the four doctors found that Plaintiff was only moderately

27  limited in her ability to understand, remember, or apply information or that she was capable of

28  learning a routine, repetitive skill.  Id. at 22.  None of the four doctors found that Plaintiff was

markedly or extremely limited in her social interactions.  Id. at 574 (Dr. Johnson finding no social interaction limitations), 586 (Dr. Raclaw finding mild limitations in Plaintiff's ability to interact with others), 1185 (Dr. McGee finding Plaintiff able to work with coworkers and the general public), and 3688 (Dr. Randhawa finding no limitations in Plaintiff's ability to interact with the general public or get along with coworkers or peers without distracting them or maintain socially appropriate behavior).  Drs. Johnson and Raclaw found Plaintiff to only be mildly limited in concentration, persistence, and maintaining pace while Dr. McGee found that Plaintiff could maintain regular attendance function in a regular job setting.  Id. at 22-23, 570, 585, and 1185-1186.  Only Dr. Randhawa found a marked limitation in this area.  Id. at 3688-3692.  Similarly, Drs. Johnson, Raclaw, and McGee found no more than a mild limitation in Plaintiff's ability to adapt and manage herself and that she could adjust to changes and deal with normal stress, while Dr. Randhawa found slight to moderate limitations in Plaintiff's ability to respond appropriately to changes in the work setting.  Id. at 23, 574, 585, 3691.

The ALJ discounted Dr. Randhawa's findings because there was little evidence in his own treating records to corroborate his assessments.  Id. at 23. The ALJ cited to Dr. Randhawa's records, which generally noted that Plaintiff's Mental Status Exams were unremarkable.  Id. at 23, 2848-2849 (General Appearance: well developed, well nourished, in no acute distress, and alert, Attire: appropriate, Grooming: good, Eye contact: appropriate, Gait and posture: normal gait and normal posture, Behavior/Manner: normal, cooperative, Motor activity: normal, Mood: depressed, fearful, worse, the same, Affect: constricted, flat, sometimes tearful, Speech: normal or normal, slightly hyperverbal but not pressured, Thought process: coherent, relevant, logical, Thought content/perceptual disturbances: no suicidal ideation, plan or intent, no homicidal ideation, plan or intent, no psychotic or inappropriate thought content[5], Sensory and cognitive: alert, clear, Insight: average, Judgment: unimpaired), 3149 (same), 3528 (same), 3649 (same), 3718 (same).

---

[5] The records at 3649 and 3718 did note "passive death wishes" no plan or intent.  AR at 3649 and 3718.

1    Plaintiff cites to various medical records in support of her position that the ALJ erred.

2    However, many of the arguments and evidence identified by Plaintiff discuss her diagnoses,

3    symptoms, and treatments which are insufficient to satisfy the requirements of Listing 12.04.

4    See 20 C.F.R. § 416.925(d) ("Can your impairment(s) meet a listing based only on a diagnosis?

5    No. Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet

6    the requirements of a listing, you must have a medically determinable impairment(s) that

7    satisfies all of the criteria of the listing").  Objective evidence that establishes the criteria for

8    Listing 12.04 is also required.  See 20 C.F.R. § 416.925(c)(3) ("Within each listing, we specify

9    the objective medical and other findings needed to satisfy the criteria of that listing").

10    Plaintiff identifies testing that supports her position; a May 17, 2017 SOAPP score of 7[6],

_____

26  [6] SOAPP stands for Screener and Opioid Assessment for Patients with Pain and is used to assess

27  a patient's risk level for abusing opiate medication [see Susana R. v. Saul, 2020 WL 4720042, at *2 (C.D. Cal., Aug. 13, 2020); see also U.S. v. Ilayayev, 800 F.Supp.2d 417, 437 (E.D.N.Y. 2011)].

20CV226-BLM

PHQ9 score of 23 [7], and GAD-7 score of 14[8] and an August 18, 2017 BHI score of 98[9], PHQ score of 23, and GAD score of 21. Mot. at 7; AR at 1200, 2869, 2871. However, those scores only indicate what Plaintiff (and the ALJ) already notes, that she suffers from major depressive disorder and anxiety; they do not speak to whether or not Plaintiff has marked or extreme limitations in the areas required to satisfy paragraph B. Plaintiff also cites to Dr. Randhawa's conclusions in her mental assessment which, as discussed above, are insufficient. Mot. at 8-9; see also supra at B(3)(a) at p. 19, 21.

The ALJ also contemplated the paragraph C criteria and found that "the evidence fails to establish the marginal adjustment necessary to satisfy paragraph C." Id. at 23.

Because the ALJ properly found that Plaintiff failed to satisfy the paragraph B or C criteria, she properly concluded that Plaintiff does not meet or medically equal Listing 12.04. While Plaintiff presents a different interpretation of the record, the Court is limited to reviewing the Commissioner's decision for legal error or lack of supporting substantial evidence. See 42 U.S.C.

---

[7] "The Patient Health Questionnaire, PHQ–9, is used to screen, diagnose, monitor, and measure the severity of depression. Center for Quality Assessment and Improvement in Mental Health, available at http:// www.cqaimh.org/pdf/tool_phq9.pdf. Scores of 15-19 indicate moderately severe major depression that warrants treatment with an antidepressant or psychotherapy. Scores of 20 and greater indicate severe major depression that warrants treatment with an antidepressant and psychotherapy. The highest possible score is 27, if the individual has endorsed all nine categories of symptoms occurring nearly every day." Blattenbauer v. Berryhill, 2018 WL 7364817, at *4 n.5 (D.N.D., Dec. 13, 2018) (quoting Ramo v. Colvin, 2014 WL 896729, at *5 n.12 (D. Minn. Mar. 6, 2014)).

[8] "The Generalized Anxiety Disorder Screener, GAD-7The Generalized Anxiety Disorder Screener, GAD-7, is used to assess for generalized anxiety disorder. The University of Vermont, College of Medicine, available at http://www.uvm.edu/medicine/ahec/documents/ Generalized_Anxiety_Disorder_Screener_GAD7.pdf. Scores of 8 and above indicate probable anxiety disorder. Id. The highest possible score, 21, is achieved if the individual endorses the following symptoms occurring nearly every day: feeling anxious, nervous or on edge; not being able to stop or control worrying; worrying too much about different things; trouble relaxing; being so restless that it is hard to sit still; becoming easily annoyed or irritated; and feeling afraid, as if something awful might happen." Blattenbauer, 2018 WL 7364817 at *4 n.5 (quoting Ramo, 2014 WL 896729 at *5 n.12).

[9] Behavioral Health Impairment severity score. AR at 2869.

20CV226-BLM

§ 405(g).  Here, where the ALJ's decision is free from legal error and supported by substantial evidence, the Court may not substitute its judgment for the Commissioner's.  See William P. v. Comm'r of Soc. Sec., 446 F.Supp.3d 715, 722 (E.D. Wash. 2020).

**C.    Step Four**

After determining that a claimant's impairment or combination of impairments does not meet or equal an impairment in the Listings, an ALJ determines a plaintiff's RFC and moves to step four of the evaluation process.  See 20 C.F.R. § 416.920(a)(4)(iv).  At step four, an ALJ must determine if a claimant has the RFC to perform past work.  Id.

Plaintiff argues that she "clearly cannot perform her past relevant work."  Mot. at 9.   The ALJ agreed and concluded that "because [Plaintiff's] past work exceeds her residual functional capacity, she is unable to perform her past relevant work."  AR at 30.  It is unclear what Plaintiff is arguing here or why she has included a section labeled Step Four in her brief.  Because both Plaintiff and the ALJ agree that Plaintiff cannot perform her past relevant work, the Court finds that the ALJ did not err in concluding that Plaintiff is unable to perform her past relevant work.

**D.    Step Five**

If the ALJ determines that the claimant is not able to perform their past work, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in light of her RFC, age, education, and work experience.  See 20 C.F.R. § 404.1520(g).  At this stage, the SSA has the limited burden of providing evidence that demonstrates that other work exists for the claimant in significant numbers in the national economy given the claimant's RFC, age, education, and work experience.  See 20 C.F.R. § 404.1560(c).  This may be done by using the testimony of a VE or by reference to the Grids.  See Lounsberry v. Barnhart, 468 F.3d 1111, 1114 (9th. Cir 2006).

Plaintiff does not argue that the ALJ failed to properly use the grids or a VE at Step Five.  Mot.   Nor does she argue that the ALJ improperly rejected her subjective symptom testimony.  Instead, Plaintiff argues that (1) "she is unable to perform any other work generally available in the national or regional economies," (2) the allegations of malingering and exaggeration of symptoms are not supported by the medical evidence in the record, (3) the ALJ 's cites in support

1  of her decision do not support her conclusions, and (4) "[t]he medical evidence in this case

2  strongly indicates that claimant has several severe medical impairments that affect claimant's

3  ability to engage in work-related activities." Mot. at 10-12.

4        Defendant contends that substantial evidence supports the ALJ's RFC assessment and

5  conclusion that Plaintiff can perform other work. Oppo. at 18. Defendant also contends that

6  the ALJ properly discounted Plaintiff's allegations in assessing her RFC and correctly found that

7  the objective medical evidence did not support Plaintiff's claims of disability, that Plaintiff was

8  able to engage in activities of daily living that were inconsistent with disabling limitations, and

9  that there were inconsistencies in the record undermining Plaintiff's subjective symptom

10  allegations. Id. at 18-22.

11                i.    Relevant Physical Health Medical Records

12        In 2016, Dr. Goubran Galal treated Plaintiff for the injuries she sustained in relation to

13  her workers' compensation case. Id. at 888. Dr. Galal concluded that Plaintiff was "temporarily

14  totally disabled" from April 6, 2016 - May 4, 2016 [see id. at 896], from May 4, 2016 – June 1,

15  2016 [see id. at 944], from July 6, 2016 - August 3, 2016 [see id. at 905], from October 5,

16  2016 – November 2, 2016 [see id. at 921], and from November 9, 2016 – December 14, 2016

17  [see id. at 923]. The ALJ gave little weight to Dr. Galal's finding that Plaintiff was temporarily

18  totally disabled because it "fail[ed] to describe specific functional limitations, d[id] not explicitly

19  take into account Agency rules and regulations; and infringe[d] upon the discretion of the

20  Commissioner." Id. at 29.

21        On June 13, 2017, State Agency Consultant Dr. J. Rule reviewed Plaintiff's medical records

22  and concluded that Plaintiff (1) could occasionally lift/carry twenty pounds, (2) could frequently

23  lift/carry ten pounds, (3) could sit, stand, and walk for six hours out of an eight hour day, (4)

24  had no push/pull limitations, (5) could occasionally climb ladders, ramps, stairs, ropes, scaffolds,

25  balance, stoop, kneel, crouch, and crawl, and (6) had no manipulative, visual, communicative,

26  or environmental limitations. Id. at 587-588.

27        On April 28, 2017, Board Eligible Internist, Dr. Rocely Ella-Tamayo examined Plaintiff at

28  the request of the Department of Social Services Disability and Adult Programs. Id. at 1189-

20CV226-BLM

1194.  Dr. Ella-Tamayo concluded that Plaintiff (1) could occasionally lift/carry twenty pounds, (2) could frequently lift/carry ten pounds, (3) could stand and walk for six hours out of an eight hour day with normal breaks, (4) had no sitting restrictions, (5) could occasionally kneel, (6) could not squat,  (7) had no significant impairment of her hands, and (8) had no visual, communicative, or environmental limitations.  Id. at 1194.

On May 8, 2017, State Agency Consultant Dr. B. Vaghaiwalla reviewed Plaintiff's medical records and drew the same conclusions as Dr. Rule.  Id. at 571-573. Dr. B. Vaghaiwalla noted that Plaintiff "while [Plaintiff was] not capable of performing work [she] ha[d] done the past, [she was] able to perform work that is less demanding" and that her condition was not severe enough to keep her from working.  Id. at 576.

The ALJ gave great weight to the opinions of Drs. Rule, Ella-Tamayo, and Vaghaiwalla because they were "consistent with the objective medical evidence, including the generally unremarkable imaging studies and examination findings." Id. at 29.

        ii.    Relevant Mental Health Medical Records[10]

On April 28, 2017, Dr. McGee concluded that Plaintiff (1) is competent to manage funds on her own behalf, (2) is capable of learning a routine, repetitive skill, (3) is able to function in a regular job setting without additional behavioral controls, (4) has adequate reasoning capabilities, (5) would not create a hazard in the workplace, (6) would be able to maintain regular attendance, (7) would be able to work with coworkers and the general public, (8) relates adequately to authority figures, (9) is able to comply with instructions, (10) would be able to deal with the usual stress of competitive work and adjust to change, (11) would not require personal supervision, and (12) would be able to get to work on her own if the distance was short or she used public transportation.  Id. at 1185-1186.

On May 9, 2017, State Agency Psychological Consultant Dr. G. Johnson reviewed Plaintiff's medical records and assessed Plaintiff's Mental RFC for March 23, 2016- present.  Id.

_____

[10] These records were discussed in section B(3)(a) above [see supra at 17-19] but are included here for ease of reference.

20CV226-BLM

at 573-574.  Dr. Johnson concluded that Plaintiff is not significantly limited in (1) remembering locations and work like procedures, (2) understanding and remembering very short and simple instructions,  (3) carrying out very short and simple instructions, (4) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, (5) sustaining an ordinary work routine without special supervision, (6) working in coordination with or proximity to others without being distracted by them, (7) making simple work related decisions, and (8) completing a normal workday and workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.  Id.  Dr. Johnson also concluded that Plaintiff is moderately limited in her ability to understand and remember detailed instructions (high borderline memory function) and in her ability to carry out detailed instructions, or maintain attention and concentration for extended periods.  Id.  Dr. Johnson found that Plaintiff had no social interaction limitations or adaptation limitations.  Id.

On June 20, 2017, medical consultant Dr. Hillel Raclaw reviewed Plaintiff's medical records and concluded that Plaintiff was not significantly limited in (1) remembering locations and work like procedures, (2) ability to understand and remember very short and simple instructions, (2)  ability to carry out very short and simple instructions, (3) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (4) sustain an ordinary work routine without special supervision, (5) work in coordination with or proximity to others without being distracted by them, (6) make simple work related decisions, (7) complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and was moderately limited in her ability to (1) understand and remember detailed instructions (high borderline memory function), (2) carry out detailed instructions, and (3) maintain attention and concentration for extended periods.  AR at 588-590. Dr. Raclaw further concluded that Plaintiff had no social interaction limitations or adaptation limitations.  Id. at 590.  Dr. Raclaw concluded that there was a mild limitation of Plaintiff's ability to interact with others and concentrate, persist, or maintain pace.  Id. at 585.

20CV226-BLM

The ALJ gave great weight to the opinions of Drs. McGee, Johnson, and Raclaw because they were "consistent with the objective medical evidence, including the unremarkable mental status examinations throughout the record." Id. at 29.

Dr. Navtej Randhawa, Plaintiff's treating psychiatrist, completed a mental assessment of Plaintiff on June 15, 2018. Id. at 3688-3692. Dr. Randhawa concluded that Plaintiff was not limited in her ability to (1) remember locations and workweek procedures, carry out very short and simple instructions, (2) work in coordination within a proximity to others without being distracted by them, (3) interact appropriately with the general public, (4) ask simple questions or request assistance, (5) get along with coworkers or peer without distracting them or exhibiting behavioral extremes, (6) maintain socially acceptable behavior and to adhere to basic standards of neatness and cleanliness, and (7) be aware of normal hazards and take appropriate precautions. Id. Dr. Randhawa also concluded that Plaintiff was slightly limited in her ability to (1) understand and remember detailed instructions, (2) accept instructions and respond appropriately to criticism from supervisors, and (3) set realistic goals or make plans independently of others. Id. Plaintiff was slightly to moderately limited in her ability to respond appropriately to changes in the work setting and moderately limited in her ability to (1) sustain an ordinary routine without special supervision (due to pain), (2) make simple work related decisions, and (3) travel in unfamiliar places or use public transportation. Id. Finally, Dr. Randhawa found that Plaintiff was (1) markedly limited in her ability to understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, (5) maintain regular attendance, and be punctual within customary tolerances, (6) complete a normal work-day and work-week without interruption from psychologically based symptoms and (7) perform at a consistent pace without an unreasonable number and length of rest periods. Id. The ALJ gave little weight to Dr. Randhawa's findings because there was little evidence in his own treating records to corroborate his assessments. Id. at 23.

       iii.   Analysis

As summarized above, there is substantial evidence supporting the ALJ's RFC

20CV226-BLM

1   determination.  The ALJ concluded that Plaintiff can "lift or carry twenty pounds occasionally

2   and ten pounds frequently; stand or walk for six hours and sit for six hours in an eight-hour

3   workday; occasionally climb, balance, stoop kneel, crouch, or crawl; and perform simple, routine

4   tasks."  Id. at 23.  Here the findings of Drs. Rule, Vaghaiwalla, and Ella-Tamayo provide

5   substantial evidence in support of the ALJ's RFC determination.  Consistent with the ALJ's RFC,

6   all three doctors found that Plaintiff could lift or carry twenty pounds occasionally and ten pounds

7   frequently; stand or walk for six hours and sit for six hours in an eight-hour workday; and

8   occasionally climb, balance, stoop kneel, crouch, or crawl.  Id. at 587-588, 1194, and 571-573.

9   While Dr. Galal's findings differed, it is the ALJ's job to resolve any conflicts in the record and

10  the ALJ may properly reject the treating doctor's opinion by providing "specific and legitimate

11  reasons" supported by substantial evidence in the record for doing so.  See Turner v. Comm'r.

12  of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31

13  (9th Cir. 1995)).   Furthermore, an ALJ is not bound by an opinion under the workers'

14  compensation scheme.  See 20 C.F.R. § 404.1504 ("[b]ecause a decision by any other

15  governmental agency or a nongovernmental entity about whether you are disabled, blind,

16  employable, or entitled to any benefits is based on its rules, it is not binding on us and is not

17  our decision about whether you are disabled or blind under our rules. Therefore, in claims filed

18  (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination

19  or decision about a decision made by any other governmental agency or a nongovernmental

20  entity about whether you are disabled, blind, employable, or entitled to any benefits.").

21          The findings of Drs. Johnson, Raclaw, and McGee also provide substantial evidence in

22  support of the ALJ's RFC determination.  The ALJ considered their findings when she limited

23  Plaintiff to "perform simple, routine tasks."  Id. at 23.  Specifically, Dr. McGhee concluded that

24  Plaintiff is able to comply with instructions and has adequate reasoning capabilities while Drs.

25  Johnson and Raclaw found that Plaintiff was not significantly limited in her ability to understand,

26  remember, and carry out short and simple instructions.  Id. at 573-574, 589, 1185-1186.  This

27  is consistent with and supportive of the ALJ's RFC determination.

28          Additionally, while the ALJ noted references in the record that Plaintiff was "likely

20CV226-BLM

malingering" and that there was an "exaggeration of cognitive difficulties[,]" and cited to various records in support of those references [11], the ALJ did not rely on the references in reaching her decision and did not make a finding that Plaintiff was malingering or exaggerating.  AR at 25, 30.    Even if the ALJ had relied upon the allegations of malingering and exaggeration, contrary to Plaintiff's arguments, the allegations are supported by the medical evidence in the record. The references cited by the ALJ come directly from the medical evidence in the record and are based on objective medical testing and the conclusions of DO Edward Markus who noted that (1) cognitive testing could not be completed due to invalid test scores, (2) Plaintiff's "memory complaints were non-specific in nature and are high frequency, common everyday memory lapses even within the normal population[,]" and (3) no further neurologic interventions or investigations were indicated.[12]  Id. at 1238-12389.

Finally, Plaintiff again argues that her "physical impairments clearly meets listing under 1.04 and 12.04."  Mot. at 11.  The Court has already addressed this argument and concluded that Plaintiff has failed to demonstrate that the ALJ erred in finding that Plaintiff does not meet the listings for 1.02, 1.04, or 12.04.  See Supra Section B at 8-22.

///

---

[11] The ALJ cited to Plaintiff's April 27, 2017 telephonic consultation with Angeline Genevieve Sporty, D.O. for chronic low back and neck pain with cognitive delay.  Id. at 1205-1206.  In her notes, D.O. Sporty wrote that she was advised by Neuro that Plaintiff underwent testing and was "likely **malingering** – not real problem." Id. at 1206 (emphasis in original).  The ALJ also cited to Plaintiff's December 11, 2016 assessment with D.O. Edward Markus.  Id. at 1238-1239. At that assessment, D.O. Markus noted that Plaintiff "performed below statistical chance levels" and hypothesized that Plaintiff's "performance was a subconscious exaggeration of cognitive difficulties as a 'cry for help'" or "a subconscious manifestation of anxiety about returning to work after her back injury resolves." Id. at 1238.  D.O. Markus suggested that Plaintiff "may benefit from individual counseling to help achieve insight into her cognitive concerns and to determine reasons for possible exaggeration of cognitive difficulties." Id. at 1239.

[12] The Court notes that Plaintiff spends a paragraph discussing the inaccuracies of the ALJ's quotes in support of her findings.  Mot. at 10-11.  Specifically Plaintiff argues that the ALJ incorrectly cited to her Adult Function Report in the section where she finds that Plaintiff's allegations are not supported by the record which supports Plaintiff's argument that "CLEARLY the decision is wrong." Id. at 11. However, a misplaced citation does not invalidate the entirety of the ALJ's decision.

20CV226-BLM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for summary judgment is **DENIED** and the ALJ's decision is affirmed.

**IT IS SO ORDERED**.

Dated:  4/25/2022

Hon. Barbara L. Major
United States Magistrate Judge

20CV226-BLM